IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BENNIE V. WRIGHT III, | ) |
| Plaintiff, | ) |
| v. | ) CIV-12-574-F |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

On May 11, 2007, Plaintiff protectively filed his application for benefits. At that time, Plaintiff was 28 years old, and he alleged he was disabled beginning January 1, 1992, due to epilepsy. (TR 95-97, 105, 110). Plaintiff stated that he had worked between 2001 and May

8, 2007, as a temporary laborer and that he obtained medications to treat his seizure disorder at a church-related medical clinic. (TR 110, 111-113, 116).  Plaintiff further stated that he resided with his sister and that he had an eleventh grade education although he attended special education classes. (TR 97, 109, 113-114).

      Plaintiff submitted a Function Report of his usual daily activities and functional limitations. (TR 124-130).  Plaintiff's sister also provided a Function Report of Plaintiff's usual daily activities and functional limitations. (TR 133-140).  Plaintiff provided medical records consisting of hospital emergency room reports in November 2001, January, February June, and July 2006, and February 2007, and various notes of his medical treatment during his incarceration in the custody of the Oklahoma Department of Corrections between 2002 and 2004. (TR 164-196, 240-251, 252-271). Plaintiff also underwent a consultative physical examination and a consultative psychological evaluation. (TR  200-202, 204-210).  The consultative psychological examiner, Dr. Keith Green, Ph.D., interviewed Plaintiff and conducted testing of Plaintiff on August 15, 2007. (TR 200).  Dr. Green noted Plaintiff's testing revealed he functioned in the borderline range of intellectual functioning with a full-scale IQ of 71. (TR 201-202).  The consultative physical examiner, Dr. Brennan, D.O., conducted an interview and examination of Plaintiff on October 1, 2007, and noted that Plaintiff's physical examination was completely normal. (TR 204-210).  Dr. Brennon also noted that Plaintiff stated he had three seizures per month, each lasting 3 to 4 minutes, and that he "tolerated satisfactorily" his prescribed anti-seizure medications. (TR 207).

      Plaintiff's application was administratively denied on initial and reconsideration

reviews. (TR 65, 66). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Keltch ("ALJ") on May 5, 2009. (TR 23-64). At this hearing, Plaintiff and a vocational expert ("VE") testified. The ALJ subsequently issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 13-19). The Appeals Council declined to review this decision. (TR 4-6).

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant Commissioner embodied in the ALJ's determination. Judicial review of a decision by the Commissioner is limited to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is

disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. Id. In this case, Plaintiff's claim was denied at step five. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted). "The claimant is entitled to disability benefits only if he is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142 (1987).

III. ALJ's Decision

Following the required sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 11, 2007, the protective filing date of his application. (TR 15). At step two, the ALJ found that Plaintiff had severe impairments due to a seizure disorder and borderline intellectual functioning. (TR 15). At step three, the ALJ found that Plaintiff's impairments or a combination of those impairments were not of the severity required to satisfy or equal the requirements of a listed impairment at 20 C.F.R. pt. 404, subpt. P, app. 1. (TR 15-16).

At the fourth step, the ALJ determined that despite Plaintiff's severe impairments Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the nonexertional limitations that he

> avoid even moderate exposure to hazards, avoid working in contact with the public, and avoid work that involves understanding, remembering, and carrying out detailed

>     instructions. The claimant does have ability to perform simple
>     tasks with routine supervision, to relate to supervisors and peers
>     on a superficial work basis, and to adapt to a work situation.

(TR 16). Because of the restriction which precluded Plaintiff from working around hazards, the ALJ found that Plaintiff could not perform his previous job as a day laborer. (TR 17).

Relying on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC for work, the ALJ found at the fifth step that Plaintiff was not disabled because there were jobs available in the national economy that he could perform, including the unskilled jobs of linen room attendant, laundry worker I, janitor, housekeeping cleaner, merchandise marker, and collator operator. (TR 18).

IV. Credibility

In Plaintiff's first argument for reversal of the Commissioner's decision, Plaintiff contends that the ALJ did not adequately support his credibility determination. The assessment of a claimant's RFC generally requires the ALJ to consider the claimant's credibility and "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects." Social Security Ruling 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)(quotations, citation, and alteration omitted).

Factors relevant to the credibility determination include the claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's] daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

Contrary to Plaintiff's argument, the ALJ did more than "recite the general factors he considered." Qualls v. Apfel, 206 F.3d 1368, 1372 910th Cir. 2000). The ALJ provided specific reasons in his decision, linked to substantial evidence in the record, for discounting the credibility of Plaintiff's complaints that his seizure disorder, borderline intellectual functioning, and the side effects of his medications rendered him unable to work.

The ALJ began the credibility analysis by describing Plaintiff's testimony and statements in the record concerning the frequency and severity of his seizures. The ALJ reasoned that although Plaintiff testified he had four to five seizures per month, the medical evidence showed only minimal treatment since the protective filing date of his application. (TR 17). Further, the ALJ reasoned that Plaintiff admitted he sometimes forgot to take his medications for his seizure disorder, that he obtained his medications at a free or low-cost church-related clinic, and that the objective medical evidence showed his medical treatment for seizures generally was connected with instances in which he had not taken his

medications as prescribed.[1] (TR 17). See Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996)(claimant's "failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment"). The record of Plaintiff's sparse medical treatment at hospital emergency rooms certainly supports this reasoning. (See TR 165 (noting Plaintiff's questionable compliance with anti-seizure medications), 176 (noting Plaintiff admitted not taking his anti-seizure medications the previous night), 183 (noting Plaintiff had subtherapeutic anti-seizure medication levels), 186 (noting Plaintiff had subtherapeutic anti-seizure medication levels)). Further, the ALJ pointed to Plaintiff's statements that he could perform a variety of activities, including cleaning, laundry, personal care, reading, cooking, shopping, visiting at his girlfriend's and mother's homes, and learning new things, and that he was in special education classes because he was unable to get along well with others. (TR 17).

The ALJ's credibility findings are entitled to deference because they are supported by multiple reasons set forth in the decision, and those reasons are in turn supported by the record. The ALJ did not completely discount Plaintiff's credibility. In consideration of the

---

[1]The Commissioner has determined, as a matter of policy, that "[a]s a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity (SGA). Situations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself." Social Security Ruling 87-6, 1987 WL 109184, *1 (1987). "Determination of blood levels of anticonvulsive drugs may serve to indicate whether the prescribed medication is being taken." Id. Therefore, a person cannot be found to be disabled due to epileptic seizures without "detailed information ... [that] establish[es] whether the seizures are due to factors beyond the individual's control or to noncompliance with prescribed therapy." Id. at *2.

Plaintiff's statements and the medical evidence in the record, including the mental and physical RFC assessments made by the agency's medical consultants, the ALJ found that Plaintiff's RFC for work was limited in several respects by nonexertional impairments.

Plaintiff points to his own testimony as the only basis for challenging the ALJ's RFC assessment. However, in assessing Plaintiff's RFC for work the ALJ properly considered Plaintiff's testimony as well as objective medical evidence in the record. In particular, the ALJ considered and relied on the RFC assessments of the agency's medical consultants. (TR 17).

Dr. Janice Smith, Ph.D., reviewed the medical record and provided a report dated October 9, 2007, finding that Plaintiff had borderline intellectual functioning (as found by the consultative examiner, Dr. Green, in August 2007) and that despite this impairment Plaintiff could "perform simple tasks with routine supervision," "relate to supervisors and peers on a superficial work basis," "cannot relate to the general public," and "can adapt to a work situation." (TR 214-230). Dr. Carmin Bird, M.D., reviewed the medical record and provided a report dated October 9, 2007, finding, consistent with the report of the consultative examiner, Dr. Brennan, that Plaintiff had no exertional limitations as a result of his seizure disorder and that Plaintiff "should avoid moderate exposure to hazards in the work place such as machinery, unprotected heights, etc." (TR 204-210, 232-239).

The ALJ's RFC assessment was appropriately expressed in terms of the work-related nonexertional limitations as found by these medical consultants. See Social Security Ruling 96-8p, 1996 WL 374184, at *6 (1996)("nonexertional capacity must be expressed in terms

of work-related functions," such as understanding and remembering instructions and responding appropriately to supervision). There is substantial evidence in the record to support the ALJ's RFC assessment.

V. ALJ's Duty to Develop the Record

Plaintiff next contends that the ALJ did not satisfy his burden to develop the record because he (1) did not obtain a consultative neurological evaluation and (2) did not obtain "incomplete or missing records" from Plaintiff's previous disability application. "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993). It is not the ALJ's duty, however, to be the claimant's advocate, and "the ultimate burden of proving that [the claimant] is disabled under the regulations" is borne by the claimant. Id. at 361. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)(quotation omitted).

Plaintiff asserts that the Commissioner's decision should be reversed because the

Commissioner did not order a consultative neurological evaluation.[2] At the close of the administrative hearing, the ALJ indicated he might request a consultative neurological examination because the record did not contain a "current EEG," or electroencephalogram. (TR 63). In this case, however, the ALJ did not fail to exercise his duty to obtain a complete record. Rather, the ALJ exercised his discretion to obtain consultative psychological and physical evaluations of Plaintiff. In light of the sparse medical record, which reflects that Plaintiff sought medical treatment infrequently and generally as a result of his non-compliance with the prescribed medication regimen to treat his seizure disorder, and the uncontroverted assessments of the agency's medical consultants concerning Plaintiff's functional limitations as a result of his impairments, the ALJ did not err in failing to obtain a consultative neurological evaluation. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir.1990)(finding substantial evidence that a seizure condition poorly controlled due to noncompliance with a treatment regimen was not a disability).

Plaintiff points to Dr. Green's note in his report of his consultative psychological evaluation that, in connection with the psychologist's diagnostic impression, "[c]omprehensive psychodiagnostic testing and acquisition of complete background records would be recommended as an independent means of corroborating the following diagnostic

---

[2] In several instances, Plaintiff refers to the lack of a "consultative mental examination." Plaintiff's Opening Brief, at 8, 9, 13, 14. Because the record includes the report of a consultative psychological evaluation of Plaintiff and because Plaintiff initially asserts, and asserts again later in his brief, that the ALJ should have obtained a "consultative neurological examination," Plaintiff's Opening Brief, at 7, 12, it is assumed that the references to a "consultative mental examination" are typographical errors.

impressions . . . ." (TR 202). This generic precautionary statement does not reflect a specific recommendation that Plaintiff undergo additional mental diagnostic evaluations, and the ALJ did not err in failing to obtain additional psychodiagnostic or other testing of Plaintiff.

Plaintiff also contends that the ALJ failed to develop the record with respect to allegedly missing records from Plaintiff's previous disability application. During the hearing, Plaintiff testified he had previously applied for disability benefits, and his attorney stated that Plaintiff's previous application was denied on January 20, 2006, at the initial review stage. (TR 34-35). The ALJ indicated the record from this previous application included records of treatment of Plaintiff during his incarceration as well as the report of a consultative psychological evaluation of Plaintiff, which showed that Plaintiff had borderline intellectual functioning with a full-scale IQ of 77. (TR 35). The ALJ advised Plaintiff's attorney concerning how to obtain a copy of the previous administrative record. (TR 36). In the ALJ's decision, the ALJ noted that Plaintiff's attorney had not submitted additional medical records following the hearing although he had been given "ample time to do so." (TR 17).

Plaintiff has not demonstrated that the administrative record from Plaintiff's previous disability application is probative of his 2007 disability application. The ALJ's duty to "develop a complete medical history" includes a "reasonable effort[ ]" to obtain records from a claimant's treating physician. 42 U.S.C. § 423(d)(5)(B). See 20 C.F.R. §416.912(d)(stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history" ). The regulations, however, clearly obligate the disability

claimant to assist the ALJ in obtaining an adequate medical record:

> (a) General. In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s). If material to the determination of whether you are disabled, medical and other evidence must be furnished about the effects of your impairments on your ability to work. . . . We will consider only impairment(s) you say you have or about which we receive evidence.
> . . .
>
> (c) Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.

20 C.F.R. § 416.912(a), (c). Generally, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir.2004)(quotations and citation omitted). Nevertheless, where the claimant is represented by counsel, as was true in this case,"'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.' " Id. (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th

Cir.1997)).

Plaintiff suggests that it would be wrong for the Court "[t]o hold this Plaintiff, a borderline intellectually functional person, at fault when it appears that the [agency] did not have, misplaced or otherwise lost the Plaintiff's prior file records . . . ." Plaintiff's Opening Brief, at 14.  Plaintiff's argument fails to mention the fact that he was represented by counsel during the administrative proceedings and that his counsel stated he would obtain the record of the previous disability proceeding.  Moreover, Plaintiff has not asserted what attempts, if any, he made to obtain the so-called "missing evidence" or even described the "missing evidence."  With respect to the record of the previous application described by the ALJ, Plaintiff submitted records of his medical treatment during his incarceration, and Plaintiff does not suggest that additional records of treatment during this time period in 2002 to 2004 or 2005 exist.

During the hearing, the ALJ described the results of the prior consultative examination.  As the report was described by the ALJ, the consultative psychological examiner found Plaintiff to exhibit a higher level of intellectual functioning than that found by Dr. Green in connection with his August 2007 evaluation of Plaintiff.  Thus, in the absence of any indication that the "missing evidence" would provide significantly probative medical evidence with respect to Plaintiff's disability application, the ALJ did not err in his duty to develop the record by failing to obtain this allegedly missing evidence.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before    April 29th   , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    9th    day of    April   , 2013.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE